IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GERALD T. PIECZYNSKI,                          )
                                               )
                        Plaintiff,             )
                                               )
                                               )      Civil Action No. 04-1354
                v.                             )
                                               )
JO ANNE B. BARNHART                            )
COMMISSIONER OF SOCIAL SECURITY,               )
                                               )
                        Defendant,             )

MEMORANDUM ORDER

CONTI, District Judge

### *Introduction*

Pending before the court is an appeal from the final decision fo the Commissioner of

Social Security ("Commissioner" or "defendant") denying the claim of Gerald T. Pieczynski

("plaintiff") for Disability Insurance benefits ("DIB") under Title II of the Social Security Act

("SSA"), 42 U.S.C. §§ 423, *et seq.,* and Supplemental Security Income under Title XVI of the

SSA, 42 U.S.C. §§ 1381, *et seq.* Plaintiff contends that the decision of the Administrative Law

Judge (the "ALJ") that he is not disabled, and therefore not entitled to benefits, should be

reversed. Plaintiff asserts that the decision is not supported by substantial evidence. It is also

plaintiff's contention that the case should be remanded for the ALJ to consider properly all the

evidence of record, including two doctor reports that were subsequently entered into the record

after the ALJ rendered his opinion. The parties filed cross-motions for summary judgment

pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The court will deny defendant's

motion and grant plaintiff's motion in part and deny plaintiff's motion in part for the reasons set

out below.   Plaintiff's motion will be granted in part by remanding the case to the ALJ for further proceedings consistent with this opinion.   The remand is warranted due, among other things, to discrepancies between certain of the medical records and Dr. Tran's Residual Functional Capacity Assessment which was relied upon by the ALJ in determining that plaintiff was capable of returning to his prior relevant work.

### Procedural History

Plaintiff filed a previous application for benefits which was denied on October 1, 1998. (R. at 29-38.)  Plaintiff thereafter appealed to the Appeals Council.  The Appeals Council affirmed the findings and conclusions reached by the ALJ. (R. at 17.)  No further appeal was sought for that application for benefits. (Id.)

On June 18, 2002, plaintiff filed the application for benefits which is at issue before the court. (Id.)  On September 25, 2003, a hearing was conducted before the ALJ at which time plaintiff appeared and testified. (R. at 210-30.)  Plaintiff was represented by an attorney at the hearing. (Id.)  In a decision dated November 26, 2003, the ALJ determined that plaintiff was not disabled within the meaning of the SSA and was able to return to his past relevant work. (R. at 17-22.)  Plaintiff timely requested a review of that determination and by letter dated July 15, 2004, the Appeals Council denied the request for review. (R. at 5-7.)  Plaintiff subsequently commenced the present action seeking judicial review.

### Legal Standard of Review

The Congress of the Untied States provides for judicial review of the Commissioner's denial of a claimant's benefit. 42 U.S.C. § 405(g).  This court must determine whether there is substantial evidence which supports the findings of the Commissioner. Id.  "Substantial evidence

is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).  The deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Burhart, 312 F.3d 113, 118 (3d Cir. 2002).  This standard, however, does not permit the court to substitute its own conclusion for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry).

### Plaintiff's Background and Medical Evidence

Plaintiff was born on June 6, 1948, and was thus 55 years old at the time of the hearing before the ALJ. (R. at 214.)  He graduated from high school, but had no other formal education. (R. at 214-15.)  Plaintiff was married two times; both marriages ended in divorce. (R. at 57.)  He currently lives by himself and does not own a car. (R. at 227.)  Plaintiff used to be a walker, and even did the StepTrek, which consisted of a predetermined course through the Mt. Washington and South Side neighborhoods of Pittsburgh, Pennsylvania. (R. at 225.)

When plaintiff first began working as an adult in the late 1960s and early 1970s he worked in a mill, and then later as a teamster. (R. at 215.)  It was through his employment at the mill that he went to welding school. (Id.)  Plaintiff moved from Pittsburgh, Pennsylvania to Florida in the 1970s.  While in Florida, he worked primarily as a waiter in various restaurants. (R. at 216.)

Plaintiff later moved from Florida  back to Pittsburgh. (Id.)  The jobs that plaintiff held after he returned included: delivery truck driver for a photo company, bartender for a

neighborhood bar, and waiter. (R. at 69.)  He alleges that he became unable to work on November 15, 1996, due to his disabling condition. (R. at 57.)  He, however, testified at the hearing before the ALJ that in November of 1996 the photo company he was working for downsized, and he was subsequently laid off with about four other individuals. (R. at 217.)

Plaintiff has been involved in multiple motor vehicle accidents.  The first, and the most serious one, happened in the 1970s.  Plaintiff argues that accident caused most of his problems. (R. at 222.)  The other driver involved in the accident was killed, and plaintiff had to wear a neck collar for a while. (Id.)  Another automobile accident happened in the early 1980s. (Id.)  There was also an industrial accident in which plaintiff's wrist was severely injured. (R. at 116.)

Plaintiff suffers from chronic pain in both hands and wrists, his neck, his right shoulder, both knees, left portion of his hip, and his lower back. (R. at 68, 127.)  On June 22, 1998, the pain was so severe that it was waking him up at night. (R. at 154.)  The pain in his neck, knees, and hip have been attributed to osteoarthritis. (R. at 155, 160.)

Plaintiff's current medication list includes prilosec, tylenol (acetaminophen), and lopid (gemfibrozil). (R. at 222-23.)  Plaintiff stopped taking vioxx and neurontin, which he had used to treat pain.  (R. at 140-43.)  Plaintiff was switched to vioxx on April 19, 2001, after the drug naprosyn, which was being used to treat his degenerative joint disease ("DJD"), caused him to have an upset stomach. (R. at 143.)  Plaintiff stated that "any strong medication upsets [his] stomach." (R. at 223.)  Plaintiff had multiple treatments for his chronic pain including physical therapy, medications, and steroids.  None of these treatments, however, helped him. (R. at 127.)  Plaintiff refused cortisone injections for his various pains because he had them in the past and

they never worked for him.  (R. at 222.)  Plaintiff stated that when he used to get the injections, they wore off by the time he walked out of the doctor's office. (Id.)

An MRI of plaintiff's cervical spine was performed on June 30, 1998.  Narrowing of the c4-5 disc space and, to a lesser extent, of the c5-6 disc space was noted on the MRI.  (R. at 106.) The MRI also revealed degenerative narrowing of the intervertebral formina bilaterally which the doctor felt was probably related to degenerative changes of uncinate process.  (Id.)  A posterior central and right sided end plate osteophyte disc complex was also seen.  (Id.)  On August 22, 2000, a follow-up x-ray was performed on his back.  There was a history of sciatica noted as well as narrowing of the disc space at the L5-S-1 level. The reading physician noted that there was moderate degenerative disc disease ("DDD") at the L5-S1 disc space level.  (R. at 105.)  During this same visit, an x-ray was taken on plaintiff's knee for left knee pain.  It was observed through lateral and oblique views that there was "narrowing of the tibiofemoral and patellofemoral joint space with minimal subarticular sclerosis," indicating mild degenerative joint disease changes. (R. at 104.)  In the final report on his knees ability to bear weight, Dr. Shaw, the reading physician, noted mild to moderate narrowing of the joint spaces, and bilateral subarticular sclerosis.  (R. at 103.)

On September 18, 2002, plaintiff was seen and evaluated by Dr. Ravishankar who works for the Pennsylvania Bureau of Disability Determination.  (R. at 127-30.)  In taking plaintiff's history, Dr. Ravishankar noted that plaintiff was "unable to sit for more than 15 minutes and unable to stand for a significant amount of time."  (R. at 127.)  There was a history of plaintiff's left wrist being fused and a bone graft from his left iliac.  Carpal tunnel surgery to the right wrist was also noted. (R. at 128.)  With respect to the physical examination of plaintiff, Dr.

5

Ravishankar indicated that plaintiff was able to "walk with a fairly steady gait into my office. He did not appear to be in much discomfort when walking." (R. at 128.)

Dr. Ravishankar evaluated plaintiff's range of motion for multiple parts of his body. (R. at 128.) The doctor stated:

> The patient did have slight restriction of range of motion of his neck in all directions in the last five degrees. Turning the head to the right was restricted in the last 10 degrees. Forward flexion of his back was up to 70 degrees. He was able to comfortably bend down to take off his shoes. Side bending was up to 15 degrees on either side. He did not have any significant deformities in his back. He did have mild tenderness of the paraspinal muscles in the right side in the lower lumbar spine. The range of motion of the hips and the knees appeared to be intact. The range of motion of the knees produced pain....Range of motion of the shoulders are limited in abduction and elevation in the last 10 degrees secondary to pain. . . . H is left wrist range of motion was limited to 0 degrees on all directions secondary to the left wrist fusion.

(R. at 129.) In the doctor's neurological examination, the movements that he was requesting plaintiff to perform so that plaintiff could be thoroughly evaluated were all limited by pain. (Id.) The doctor was able to make a determination during the neurological analysis that "the patient did...have giveway type of weakness in all muscle groups in both upper and lower extremities with subjective altered sensation both upper and lower extremities in a glove and stocking fashion." (R. at 129.) The prognosis given for plaintiff by Dr. Ravishankar was poor for significant improvement from his pain in his neck and back. (Id.) The doctor indicated that plaintiff's pain associated with his knee should improve with the surgery that was pending at that time. (Id.)

Since July 2000 plaintiff complained of chronic and constant pain associated with his left knee. (R. at 142-45.) Plaintiff was taking tylenol for the pain related to his left knee, but felt that the pain was getting better on its own. (R. at 144.) The pain in his left knee was from DJD. (Id.)

6

On August 5, 2002, it was indicated that plaintiff complained of right knee pain for the past two to three months. (R. at 134.) Pain specifically associated with his right knee, however, was indicated as early as February 13, 2002, where swelling of the right knee was noted. (R. at 141.) He was able to walk at this point, but there was pain associated with the bending of the knee. (R. at 134.) The pain was described as chronic and constant. (Id.) The pain caused him to change his gait and this lead to increased pain in his left hip and lower back. (R. at 136.) This pain caused him to be referred to an orthopedist, and as of September 16, 2002, plaintiff was being seen in the orthopedic clinic for two to three months. (R. at 133.) He was having trouble walking up and down steps and was having catching and locking in his knee. (Id.) An MRI was eventually performed that depicted a right medial meniscal tear. To help with the pain, the orthopedist noted that he was given anti-inflammatory treatment, but this gave him minimal help. (Id.) The plan as of September 16, 2002, was to have arthroscopic knee surgery to repair the tear. (Id.) This appointment was made, and subsequently cancelled when plaintiff became sick. (R. at 132.) The surgery was put on hold because the pain was feeling better. (Id.) It was noted that he "walks everywhere" on September 30, 2002, and that even though he still had pain in his left hip, it was not affecting his daily living. (Id.)

On his application for disability, plaintiff indicated that everyday he "wakes up and [his] pain is worse." (R. at 88.) He only carries light grocery bags, at most two at a time. (R. at 90.) He takes breaks while walking home from the grocery store. (Id.) He currently lives in an apartment that requires he walk up 25 steps to enter the apartment. (R. at 89.) He limits the number of times that he goes up and down his steps. (R. at 91.) In the hearing before the ALJ, plaintiff indicated that he only goes up and down his steps a couple of times a day. (R. at 225.)

7

He does walk a "little bit" "maybe a couple of blocks." (R. at 225-26.)  Plaintiff only did the StepTrek one time[1] because he feels that his knees and hips were further injured because of the amount of walking involved. (R. at 226.)  His subjective analysis of how long he can stand for any length of time is 15-20 minutes at a time. (R. at 225.)

## *Discussion*

Disability is defined under Title XVI of the SSA as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when his physical or mental impairment or impairments are of such severity that he is not only unable to do "his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(B).

The SSA outlines a five-step sequential evaluation that must be applied in order to make a disability determination. 20 C.F.R. § 416.920.  That five-step evaluation consists of the following stages: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404 subpt. P., app. 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the

---

[1]  Plaintiff contends that he participated in StepTrek "five years ago, maybe." According to the official website for "StepTrek," the first StepTrek took place on April 22, 2000. See http://www.steptrek.org/Newsletter.php and the "Special StepTrek Edition 2005."

national economy in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920; *see* <u>Sykes v. Apfel</u>, 228 F.3d 259, 262-63 (3d Cir. 2000).  If a plaintiff fails to meet the burden of proving the requirements in the first four steps, the administrative law judge may find that plaintiff is not disabled. <u>Burns v. Burnhart</u>, 312 F.3d at 119.

In the instant case, the ALJ found: (1) plaintiff has not engaged in substantial gainful employment since the alleged onset of disability on November 15, 1996; (2) plaintiff has an impairment or a combination of impairments considered to be severe based on the requirements in the Regulations 20 C.F.R. § 404.1520(b); (3) these impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) plaintiff is able to perform his past relevant work as a bartender and a delivery person pursuant to 20 C.F.R. § 404.1565. (R. at 21-21).  Having found that plaintiff could perform his past relevant work the ALJ did not need to address the fifth step in the sequential evaluation.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, he articulates essentially two arguments to support his position.  First, he asserts that the ALJ erred at step four of the sequential evaluation by a) finding that the plaintiff is capable of returning to his past relevant work and b) violating the doctrine of collateral estoppel.  He argues that had the ALJ not erred at step 4 of the evaluation, plaintiff would have been found to be disabled as of his 55th birthday.  Second, he argues that the medical evidence of two consultative examiners should be accepted pursuant to sentence six of section 405(g) of the SSA.

### A. <u>Alleged Errors at Step Four</u>

#### (1)  Capability of Returning to Prior Work

Based upon a review of the record as a whole, the court concludes that further explanation is needed with respect to the standing and sitting capabilities of plaintiff, which are implicated in plaintiff's prior work.  Specifically, Dr. Ravishankar, a consultative examiner who examined plaintiff on September 18, 2002, noted in the "history" part of his report that plaintiff was only able to sit for 15-20 minute periods and could not stand for any significant length of time.  Plaintiff testified at the hearing before the ALJ that he was only capable of standing for 15-20 minute periods. (R. at 127, 225.)  Despite these indications of limited sitting and standing capabilities, the ALJ determined that plaintiff was capable of returning to his past relevant work as a delivery truck driver or as a bartender.  The ALJ did not address whether a truck driver would  be subjected to significant periods of time where the driver would be in a seated position, and conversely, whether a bartender would be standing for long periods of time.  If those requirements are implicated in plaintiff's prior work, the limitations, if credible, could preclude plaintiff from returning to those types of jobs.

The ALJ did not discuss the limitations involved in plaintiff's prior work.  The only indication in the record that plaintiff would be capable of prolonged periods of sitting or standing is in the assessment of Dr. Tran, a reviewing agency physician.  Dr. Tran indicated that he felt plaintiff's subjective complaints of pain were only partially credible and he was capable of sitting and standing for six hours in an eight-hour work day. (R. at 176.)  Dr. Tran, however, offers no explanation with respect to how he came to his determination regarding plaintiff's sitting and standing capabilities, other than he found plaintiff to be partially credible. (R. at 183-85.)  Just as

10

greater deference shall be given to a treating physician than to a non treating physician, an examining physician should be given greater deference than a non examining physician. *See* 20 C.F.R. §§ 404.1527, 416.927.  With the significant difference in the amount of time that plaintiff is capable of sitting or standing, and with sitting and standing for extended periods of time arguably being an integral part of his past relevant work, the ALJ needed to explain why Dr. Ravishankar's report was not credited and why in light of Dr. Ravishankar's report plaintiff was only partially credible.

There are other inconsistencies between the record and the ALJ's findings that need further explanation.  Specifically, in assessing plaintiff's residual functional capacity, the ALJ made a reference to the plaintiff not requiring any narcotic medications to control his pain at the present time. (R. at 20).  Plaintiff, however, testified at his hearing that any medication stronger than the tylenol upsets his stomach. (R. at 223).  In the past plaintiff had taken both vioxx[2] and naprosyn, which are both prescription medications utilized to help control and try to limit pain.  Corroborating what plaintiff indicated at the hearing, a Mercy Health Clinic medical record indicates that the reason plaintiff was taken off naprosyn was because it was upsetting his stomach. (R. at 143).  The ALJ made no reference to any of these prescription pain medications, and more importantly, did not include in his findings plaintiff's inability to tolerate strong pain medications, thus limiting him to using less strong, and presumably less effective pain medications.  A remand to the ALJ is necessary so that the ALJ may review Dr. Ravishankar's report, consider the inconsistencies noted above, and explain his conclusions regarding these matters.

---

[2]Vioxx has since been removed from the market by the manufacturer.

11

## (2)  Collateral Estoppel

It is well recognized that collateral estoppel and the related doctrine of *res judicata* apply not only to judicial decisions but also to administrative decisions. United States v. Utah Constr. & Mining Co., 384 U.S. 394, 421-22 (1966).  For *res judicata* to apply to an administrative decision, there are, however, certain conditions which must be found to exist:

> *res judicata* may only be properly applied to preclude a subsequent claim for disability benefits where the "same" claimant has filed a previous application based on the "same" issues and where such prior determination has become final by virtue of administrative judicial action.

Tobak v. Apfel, 195 F.3d 183, 186 (3d Cir. 1999).  The United States Court of Appeals for the Third Circuit stated that "even if *res judicata* may properly be applied, the Commissioner has discretion whether to reopen a prior disability benefits application for 'good cause' within four years of the date of notice of the initial determination." Id (citing 2- C.F.R. §§ 404.988(b), 404.989).  In the instant case, plaintiff filed a previous application for social security benefits in February 1997 asserting a disability commencing November 15, 1996.  That claim was denied by an administrative law judge in a decision dated October 1, 1998, and the Appeals Council affirmed that decision.  The ALJ specifically addressed the prior decision in which plaintiff was found to be unable to return to his prior relevant work, and the ALJ determined that there was "no basis to reopen or revise that prior decision, which has become final and binding in the absence of judicial review" – thus giving the prior decision *res judicata* effect. (R. at 17.)  While the ultimate finding of "not disabled" is consistent between the two opinions, the methodology and progression through the sequential analysis differs with respect to step four.  Whereas the administrative law judge who adjudicated the 1998 case ruled with respect to step four that

plaintiff was unable to return to his prior relevant work and continued to address the fifth step in the evaluation, the ALJ who decided 2003 case found that plaintiff was able to perform his past relevant work. (R. at 17-38.)  Plaintiff in the 2003 application applied for disability benefits based upon the same subjective complaints of pain that were the subject of the 1997 application. While the 2003 application for benefits relates to a time period successive to the prior decision, it is based upon the same complaints of pain by the same plaintiff.  When the same medical conditions are being considered by a subsequent administrative law judge, absent evidence of an improvement in the conditions, that administrative law judge is bound by the findings of a previous administrative law judge. *See* Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (1997).  The ALJ concluded that there is "no basis to reopen or revise the prior decision." (R. at 17.)  On remand, the ALJ should determine whether the same claims are at issue in this case as in the 1998 decision, and whether there has been an improvement in plaintiff's condition that warrants a different finding at step four of the sequential evaluation for the time period at issue.

**B.  New Evidence**

Concerning the issue of whether the two consultative examiner reports are "new" evidence that should be considered, the court looks to the language of the sixth sentence of section 405(g) of the SSA.  That sentence provides that the court may remand the case to the Commissioner of Social Security "only upon a showing that there is *new* evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added).  The United States Court of Appeals for the Third Circuit held with respect to that provision that "the evidence must be 'new'

13

and not merely cumulative of what is already in the record…it must be relevant and probative…[and] the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record." <u>Szubak v. Secretary of Health and Human Services</u>, 745 F.2d 831, 833 (3d Cir. 1984).  Focusing on the materiality requirement, the court of appeals stated that the relevant standard necessitates "that there be a reasonable possibility that the new evidence would have changed the outcome" and "that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." <u>Id.</u>

While the two consultative examiner reports may be new because they were not available for the ALJ's consideration, the court concludes that these reports show only "a subsequent deterioration of the previously non-disabling condition."  Plaintiff was evaluated by Drs. Minde and Lebovitz four and five months after the ALJ rendered his decision.  The ALJ was assessing plaintiff's disability claim for the relevant time frame before the hearing.  The ALJ agreed to leave the record open for three weeks in order for new evidence that was not available to come under consideration. (R. at 213.)  Evaluations done five months after the hearing before the ALJ which show disabilities cannot be determined from the record to be related to the time period for which the benefits were denied.

### *Conclusion*

Based upon the evidence of record and the parties' submissions, this court concludes that the weight given to Dr. Tran's Residual Function Capacity Assessment and the applicability of collateral estoppel require further explanation.  The decision of the ALJ denying plaintiff's application for DIB and SSI is remanded for further proceedings consistent with this opinion.

Therefore, plaintiff's motion for summary judgment (Docket No. 6) is **GRANTED IN PART AND DENIED IN PART**, and the defendant's motion for summary judgment (Docket No. 9)is **DENIED.**

      **IT IS ORDERED AND ADJUDGED** that this case shall be remanded to the Commissioner for further proceedings consistent with this opinion.

      The clerk shall mark this case as closed.

By the court:


/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated: March 27, 2006

cc: counsel of record

15